NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **REBECCA KELLY,** | Civil Action No. 24-503 (MAS) (TJB) |
| **Plaintiff,** | |
| v. | MEMORANDUM OPINION |
| **VIGILINT EXPEDITIONARY SOLUTIONS, INC.,** | |
| **Defendant.** | |

**BONGIOVANNI, United States Magistrate Judge**

Currently pending before the Court is Defendant Vigilint Expeditionary Solutions, Inc.'s ("Defendant") Motion to Vacate the Entry of Default ("Motion to Vacate Default"). (Docket Entry No. 9.) Plaintiff Rebecca Kelly ("Plaintiff") opposes Defendant's motion. (Docket Entry No. 11.) The Court has fully reviewed the arguments made in support of and in opposition to Defendant's motion. The Court considers Defendant's Motion to Vacate Default without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth below, Defendant's Motion to Vacate Default is **GRANTED.**

**I.      BACKGROUND AND PROCEDURAL HISTORY**

This matter arises out of Defendant's alleged termination of Plaintiff's employment and alleged failure to pay Plaintiff's commissions. (*See generally,* Docket Entry No. 1) ("Compl.").

On January 27, 2024, Plaintiff commenced the instant action by way of a Complaint, alleging three claims against Defendant: breach of contract (Compl. ¶¶ 10-22); quantum meruit (*id.* ¶¶ 23-28); and promissory estoppel (*id.* ¶¶ 29-33). Plaintiff brought suit against Defendant in the United States District Court for the District of New Jersey based upon diversity jurisdiction.

(*Id.* ¶¶ 2-6.) Plaintiff is a New Jersey citizen, while Defendant is a corporation based in North Carolina with a principal place of business in North Carolina. (*Id.* ¶¶ 8-9); (Certification of Erin Brady in Supp. of Def.'s Mot. to Vacate Default ¶¶ 5-9; Docket Entry No. 9-5) ("Brady Cert.").

After the Complaint was filed, the Court issued a Summons as to Defendant. (Docket Entry No. 4.) On February 12, 2024, Plaintiff served the Summons and Complaint on Defendant by and through certified mail. (Pl.'s Br. in Opp'n to Def's Mot. to Vacate Default, at 4; Docket Entry No. 11) ("Pl.'s Opp'n Br."). On February 20, 2024, process was then again served on Defendant by and through an in-person server. (*Id.*); (Def's Br. in Supp of Mot. to Vacate Default, at 4; Docket Entry No. 9-1) ("Def.'s Mov. Br."); (Docket Entry No. 5.)

According to Defendant, the two service dates led to confusion as to the controlling deadline to answer, move, or otherwise respond to Plaintiff's Complaint. (Def.'s Mov. Br., at 5.); (Ex. 1 to Def.'s Mot. to Vacate Default; Docket Entry No. 9-3.) Defendant states that it "inadvertently understood the deadline to respond to the Complaint as March 18, 2024[,]" rather than the correct deadline, March 11, 2024. (Def.'s Mov. Br., at 5.)

On March 13, 2024, as Defendant failed to answer, move or otherwise respond by March 11, 2024, Plaintiff requested the Clerk of the Court enter default as to Defendant pursuant to Federal Rule of Civil Procedure ("Rule") 55(a). (Docket Entry No. 6.) On the same date, the Clerk of the Court entered default against Defendant. (Clerk's Entry of Default of 03/13/2024.)

On March 20, 2024, Defendant filed its present Motion to Vacate the Entry of Default. On April 21, 2024, with leave from the Court, Plaintiff filed Opposition to Defendant's Motion to Vacate the Entry of Default, to which Defendant replied on April 29, 2024. (Docket Entry Nos. 10-12.)

## II. ANALYSIS

### A. Standard of Review

Pursuant to Rule 55(a): "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a).

However, the Court may vacate the entry of default for good cause. Fed.R.Civ.P. 55(c). In deciding whether good cause exists to vacate the entry of default, courts examine: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *Doe v. Hesketh*, 828 F.3d 159, 175 (3d Cir. 2016) (citing *U.S. v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Because default is considered an "extreme sanction . . . of last resort[,]" any doubts must be resolved in favor of vacating default and "proceeding on the merits." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008). The Third Circuit instructs that "[it] prefer[s] that cases be adjudicated on the merits." *Catanzaro v. Fischer*, 570 F. App'x 162, 165 (3d Cir. 2014) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (noting the Third Circuit's preference that cases be disposed of on the merits whenever practicable"). Ultimately, the decision to set aside a clerk's entry of default "'is left primarily to the discretion of the district court.'" *Bailey v. United Airlines*, 279 F.3d 194, 204 (3d Cir. 2002) (quoting *Hritz*, 732 F.2d at 1180.)

3

B. Discussion

### a. The Prejudice Suffered by the Party Seeking Default

Instances where a party will experience prejudice from vacating an entry of default include: "loss of available evidence, increased potential for fraud or collusion, substantial reliance upon the judgment," or "some other occurrence that tends to impair the [party's] ability to pursue it claims." *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982); *New Jersey Chinese Cmty. Ctr. v. McAleer*, Civ. No. 21-08320, 2022 WL 3403297, at *5 (D.N.J. Aug. 15, 2022) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987). "Delay is rarely sufficiently prejudicial to prevent vacating default." *Brink v. Bormann*, Civ. No. 23-497, 2024 WL 3159433, at *3 (D.N.J. June 25, 2024) (citing *Feliciano*, 691 F.2d at 656-57). Moreover, "the inconvenience and expense to a plaintiff of having to litigate on the merits do not rise to the level of prejudice required." *Id.* at *5 (citing *Julaj v. Tau Assocs. LLC*, Civ. No. 12-1464, 2013 WL 4731751, at *4 (D.N.J. 2013).

Defendant argues that Plaintiff would not be prejudiced if default was vacated, as there are no "credible argument[s] that Plaintiff would suffer (1) loss of available evidence, (2) increased fraud or collusion, or (3) reliance on the just-obtained default, which is not a judgment at this stage so would not justify any reliance." (Def.'s Mov. Br., at 9.)

Plaintiff, in opposition, states:

> By omitting any discussion on "prejudice," we do not concede that Plaintiff will not suffer prejudice if default is set aside. Among other things, we do not know at this time whether Plaintiff in fact has complied with our "litigation hold" request sent to Defendant on November 27, 2023, to which Defendant's local attorney had responded. (citations omitted) . . . To the extent Plaintiff's files are no longer available, for example, such circumstances certainly would evidence "prejudice" for Rule 55(c) purposes. (citations omitted).

4

(*Id.* at 5 n.1.)  While Plaintiff proffers in passing that it is unknown if Defendant has complied with the previously communicated litigation hold, such a proposition is speculative and lacks substantiation at this juncture.

Nor is there any evidence to suggest that Plaintiff will suffer an increased potential for fraud or collusion if default is vacated or that Plaintiff relied upon the default.  As Defendant notes, Plaintiff has not obtained default judgment and was timely noticed upon the entry of default as to Defendant's intent to defend itself in this action.  (Def.'s Mov. Br., at 9-10.)  In addition, this is case is still very much in its infancy.  Notably, neither discovery has commenced nor has the Court set case management deadlines.  Accordingly, the Court finds that this factor weighs in favor of vacating default.

### b. Whether the Party Subject to Default has a Meritorious Defense

A defense is shown to be meritorious "when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'"  *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).  "Defendants are not required to prove their case . . . but only to 'set forth with some specificity the grounds for [their] defense.'"  *Brink v. Bormann*, Civ. No. 23-497, 2024 WL 3159433, at *5 (D.N.J. June 25, 2024) (quoting *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988)); *see Toy v. Hayman*, 2008 WL 5046723, at *4 (D.N.J. Nov. 20, 2008) (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 195).

Defendant asserts that it is prepared to pursue three meritorious defenses, including that:

(1) No contract existed between Defendant and Plaintiff due to Plaintiff's status as an "at-will employee," and, therefore, there was neither a contractual term of employment nor a contractual right to commissions that would give rise to a claim. (Def.'s Mov. Br., at 10-11);

(2) Based on the explicit language of the agreement, Plaintiff cannot claim reliance on the compensation structure of the agreement to support her claims, as the agreement itself states that the compensation structure "was to be set annually." (*Id*. at 11-12.) Defendant alleges that, in January 2022, it modified Plaintiff's compensation structure, removing any commission payments or rights from her compensation package. (Def.'s Br. in Reply to Pl.'s Opp'n, at 9-10; Docket Entry No. 12) ("Def.'s Reply Br."); and

(3) New Jersey courts have no basis to exercise personal jurisdiction—either general or specific—over Defendant, as Defendant neither conducts business in New Jersey, maintains property in New Jersey, has customers in New Jersey, operates an office in New Jersey, nor employs medical providers in New Jersey. (Def.'s Mov. Br., at 12); (Def.'s Reply Br., at 6.) Defendant further states that two remote employees have resided in New Jersey—one of them being Plaintiff—yet argues that Plaintiff's remote work alone is insufficient to trigger personal jurisdiction over Defendant. (Def.'s Mov. Br., at 12); (Def.'s Reply Br., at 6.)

Regarding Defendant's contract defenses, Plaintiff contends that neither defense has any bearing on Plaintiff's claims. (Pl.'s Opp'n Br., at 7.) As Plaintiff states, "Plaintiff brought this action because she was not paid what she was supposed to be paid, not because she was unlawfully terminated in violation of an employment contract." (*Id.*) Plaintiff therefore maintains that the foregoing defenses are without merit.

Regarding Defendant's jurisdictional defense, Plaintiff argues that "minimum contacts" are present in this case to establish personal jurisdiction. (*Id.*) Plaintiff avers that Defendant is a telemedicine business, and New Jersey law provides that "any health care provider 'who uses telemedicine or engages in telehealth while providing health care services to a patient' shall 'remain subject to New Jersey Jurisdiction.'" (*Id*. at 8 (quoting N.J.S.A. §45:1-62(b)). Plaintiff submits that Defendant, at all relevant times, employed and/or associated with New Jersey-licensed health care providers to carry out its "telemedicine or telehealth" business and provide health care services to New Jersey patients. (*Id.* at 8.) Furthermore, Plaintiff contends that the underlying claims arise out of Plaintiff's earnings, and Defendant, pursuant to New Jersey law,

6

must have and maintain records relating to Plaintiff's employment and earnings in New Jersey. (*Id.* at 9.) Such "claim-specific contacts with the forum[,]" according to Plaintiff, establish personal jurisdiction. (*Id.*) (citations omitted.)

At this stage, Defendant is only required to set forth allegations that, if established at trial, would constitute a complete defense to the action. The Court finds that Defendant has satisfied its burden here with sufficient specificity. Even if the Court were to find that Plaintiff's status as an "at-will employee" has no bearing on Plaintiff's claims and any defenses thereto, Defendant has still asserted complete defenses based on contractual interpretation and lack of personal jurisdiction.

As Defendant states concerning its contractual interpretation defense:

> Further, even assuming *arguendo* that Plaintiff had a right to commissions under her initial offer letter, VIGILINT paid those commissions in full. To the extent that the 2018 offer letter to Plaintiff included a statement of potential commission earnings, Plaintiff received full compensation from VIGILINT for any commissions earned between the commencement of her employment and December 2021, when any right to commission compensation concluded. Counsel Cert. Ex. A. Indeed, VIGILINT provided notice to Plaintiff of its intent to modify Plaintiff's compensation structure, removing any commission payments (or rights) from her compensation package. *Id.* As noticed, VIGILINT modified the terms of her compensation (to eliminate commission) in January 2022, and Plaintiff remained in her employment until September of 2023. *Id.* At no time between January 2022 and September 2023 did Plaintiff contact Human Resources to discuss a modification of her salary structure or unpaid commission. Brady Supp. Cert. ¶9. Since the parties assented to these modifications, Plaintiff has no actionable legal claim that VIGILINT owes her any unpaid commissions under any agreement – contractual or otherwise.

(Def.'s Reply Br., at 9-10.) Such a defense, if established at trial, would constitute a complete defense against Plaintiff's contract and/or quasi-contract claims for unpaid commissions.

As to Defendant's jurisdictional defense, Defendant not only states the basis for its defense in its supporting briefs, yet also attaches a proposed motion to dismiss pursuant to Rule 12(b)(2)

7

that it intends to file if default is vacated. (*See generally*, Ex. 3 to Def's Mot. to Vacate Default; Docket Entry No. 9-5.) After reviewing same, the Court finds that Defendant has sufficiently set forth a facially meritorious jurisdictional defense that, if established, would constitute a complete defense to the action. Defendant's proposed motion to dismiss details substantive legal and factual arguments in support of its position that this Court lacks personal jurisdiction—either general or specific—over Defendant Vigilint. (*Id.* at 6-13.) Furthermore, Defendant has not only set forth substantive arguments in support of its jurisdictional defense but has also detailed substantive contentions in rebuttal to Plaintiff's challenges. (Def.'s Reply Br., at 7.) Specifically, Defendant argues that N.J.S.A. §45:1-62—the statute which Plaintiff relies upon—fails to create personal jurisdiction in this matter, as Defendant "does not use any medical providers offering telemedicine services from any location in New Jersey." (*Id.*) Defendant maintains that all arguments in support of and in opposition to its jurisdictional defense should be considered on its motion to dismiss. (*Id.* at 7-8.) The Court agrees. It is clear that whether the Court has a proper basis to exercise personal jurisdiction over Defendant is a contentious point of dispute. As such, in accordance with the Third Circuit's directive, Plaintiff's claims and Defendant's defenses thereto should be adjudicated and disposed of on the merits.

While the Court appreciates Plaintiff's arguments in opposition to Defendant's jurisdictional defense, the Court notes that, at this juncture, "[it] 'need not decide the legal issue[s] . . . it is sufficient that [defendant's] proffered defense is not facially unmeritorious.'" *Fid. Warranty Servs., Inc. v. Edison Motor Cars, Inc.*, Civ. No. 16-5728, 2022 WL 356934, at *2 (D.N.J. Feb. 7, 2022) (citing *NuMed Rehab., Inc. v. TNS Nursing Homes of Pa., Inc.*, 187 F.R.D. 222, 224 (E.D. Pa. 1999) (quoting *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73-74 (3d Cir. 1987)). Nor does the Court need to make a determination as to the strength of Defendant's

8

defense(s) at this stage. *Fid. Warranty Servs., Inc.*, 2022 WL 356934, at *2; *see Aktas v. Fig & Lily Garden*, Civ. No. 20-7409, 2021 WL 3634160, at *2 (D.N.J. Aug. 17, 2021) (finding that the defaulting party established a sufficiently plausible *prima facia* defense to Plaintiff's claims without making a determination on the strength of the defense or the ultimate outcome of the litigation). Accordingly, any request by Plaintiff for an evidentiary hearing to determine the facial validity of Defendant's defense(s) is denied.

As Defendant has sufficiently stated meritorious defenses to Plaintiff's claims, this factor weighs in favor of vacating default.

### c. The Culpability of the Party Subject to Default

Culpability is determined by "the 'willfulness' or 'bad faith' of a non-responding defendant." *Hritz*, 732 F.2d at 1182. The "culpable conduct standard requires that as a threshold matter more than mere negligence be demonstrated." *Id.* at 1183. Intentional disregard for court-mandated procedures and "[r]eckless disregard for repeated communications from plaintiffs and the court, combined with the failure to investigate the source of serious injury," may be considered culpable conduct. *Id*.

Defendant contends that the entry of default was neither willful nor the result of litigation strategy. (Def.'s Mov. Br., at 13, 15.) According to Defendant, after service had been effectuated on Defendant two separate times, the relevant insurance carrier retained Defendant's current New Jersey counsel, Connell Foley LLP ("Defense counsel"), on February 28, 2024. (Certification of Mary Hurley Kellett, Esq. ¶ 6; Docket Entry No. 12-1) ("Kellett Cert."). Upon being retained, Defense counsel was informed that the deadline to answer, move, or otherwise respond to Plaintiff's Complaint was March 18, 2024—the incorrect deadline—which Defendant and all parties involved on behalf of Defendant misunderstood to be the correct deadline. (*Id.* ¶ 7.); (Def.'s

9

Mov. Br., at 13); (Def.'s Reply Br., at 11-12.)  In addition, the insurance carrier informed Defense counsel that certain coverage discussions were ongoing and, as a result, instructed Defense counsel to refrain from initiating any direct communication with Plaintiff's counsel pending resolution of those coverage issues.  (Kellett Cert. ¶ 8.)  Soon thereafter, Defendant realized that there was an error in calculating the initial March 18, 2024, deadline for Defendant's response, as Plaintiff requested—and the Court subsequently entered—default against Defendant. (Def.'s Mov. Br., at 13-14.)  Within hours of the Court's entry of default, Defense counsel contacted Plaintiff's counsel requesting that they consent to vacate the entry of default.  (*Id.*); (Kellett Cert ¶ 9); (Ex. 1 to Def.'s Motion to Vacate Default; Docket Entry No. 9-3.)  As the parties were unable to reach a stipulation to vacate the entry of default, Defendant filed its present Motion to Vacate Default. (Def.'s Mov. Br., at 14-15); (Def.'s Reply Br., at 12-13.)  Defendant therefore asserts that default was due to an inadvertent error, which Defendant acted promptly and in good faith to remedy.  (Def.'s Mov. Br., at 14-15.)

Plaintiff, in opposition, proffers that Defendant was notified repeatedly at each stage of the lawsuit and had access to the case number and numerous documents, which provided notice of Plaintiff's lawsuit and the deadline to file a responsive pleading.  (Pl.'s Opp'n Br., at 10) (citing to Exs. C-J to Pl.'s Opp'n; Docket Entry No. 11.)  According to Plaintiff, "For the purpose of its instant application, Defendant's failure to timely respond to the summons and complaint is attributed to none other than its own culpable actions and omissions."  (*Id.*)

However, even in considering Plaintiff's contentions, there is no evidence to suggest that Defendant's failure to respond was the result of bad faith, a tactical strategy, or any intentional conduct designed to avoid compliance with court procedures and/or notices.  Rather, based on the record presented, the totality of the circumstances demonstrates that Defendant's failure to respond

10

to Plaintiff's Complaint was the result of an inadvertent misunderstanding concerning the correct deadline to file a responsive pleading. Upon Plaintiff's filing for the entry of default, Defendant and Defense counsel realized their error and immediately acted to rectify their mistake in good faith prior to filing the present motion; a fact that Plaintiff notably does not dispute. Such conduct does not rise to "willfulness" or "bad faith" to establish culpable conduct.

As the Court finds that Defendant's failure to respond to Plaintiff's Complaint was neither the result of bad faith nor any other culpable conduct, this factor weighs in favor of vacating default.

Therefore, in balancing the aforementioned "good cause" factors, the Court finds that each weigh in favor of vacating default in this matter.

### III.   CONCLUSION

For the reasons stated above, Defendant's Motion to Vacate Default is **GRANTED.** An appropriate Order follows.

Dated: October 29, 2024

> s/ Tonianne J. Bongiovanni
> **HONORABLE TONIANNE J. BONGIOVANNI**
> **UNITED STATES MAGISTRATE JUDGE**